UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| KEITH HENNING, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | CASE NO. 1:08-CV-00180 |
| v. ) | |
| ) | |
| CITY OF FORT WAYNE, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## OPINION AND ORDER

### I. INTRODUCTION

Plaintiffs Keith Henning and Monique Henning, and their children, Stephanie Henning, Keith Henning, Jr., Joshua Henning, and Virginia Young (collectively, "the Hennings"),[1] brought suit against the City of Fort Wayne ("the City"), and two Fort Wayne Police Department ("FWPD") officers, George Nicklow and Ben Springer ("the officers") (collectively, "the Defendants"). The Hennings allege that on June 23, 2007, the Defendants deprived them of their Fourth Amendment right to be free from unreasonable seizures of property when the officers shot and killed the Hennings' dog, Misty, an eleven year old Chow and German Shepherd Mix ("Misty"). (Compl. ¶¶ 5-8.) *See, e.g., Viilo v. City of Milwaukee*, 547 F.3d 707, 710 (7th Cir. 2008).

The Hennings now seek to preclude or limit the testimony of the Defendants' proffered expert witness, Susan Sharpe. (Docket # 35.) For the reasons provided, the Hennings' motion

---

[1] On July 3, 2009, plaintiffs Nichole Henning and Andrew Guevera filed a motion to be dismissed from the lawsuit (Docket #37), which was granted with prejudice on July 9, 2009. (Docket #41.)

will be GRANTED IN PART and DENIED IN PART.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On June 30, 2007, FWPD Officers Springer and Nicklow twice visited the Henning residence in response to complaints from a neighbor regarding a confrontation he had with Keith Henning. (Defs.' Resp. to Pls.' Mot. in Opp'n of Defs.' Proposed Expert Susan Sharpe ("Defs.' Resp.") 1-2.) The Hennings maintain that on the officers' first visit, they informed the officers that Misty was secured to a chain and was unable to reach them. (Compl. ¶ 7.) Approximately one hour after their initial departure, the officers were called back to the Henning residence following a second complaint. (Defs.' Resp. 1-2.) Almost immediately upon their return, and before the Hennings were aware of their presence, the officers shot Misty under disputed circumstances. Although the Hennings did not witness the shooting, they argue that since Misty was tethered to a chain and not running loose and was a gentle, non-aggressive dog, she posed no danger to the officers. (Compl. ¶ 5.)

In contrast, the Defendants assert that as they approached the Henning residence for a second time, Misty ran towards Officer Springer, growling and showing her teeth. (Defs.' Resp. 3.) The officers then shot and killed Misty, ostensibly out of fear that she was about to attack Officer Springer. (*Id.*)

On June 30, 2008, the Hennings brought suit against the Defendants in the Allen County Circuit Court, alleging that their Fourth Amendment right against the unreasonable seizure of their property was violated when Misty was shot. (Compl. ¶¶ 5-8.) On July 29, 2008, the case was removed to this Court. (Docket #2.)

The Defendants later disclosed the retention of Susan Sharpe as an expert to offer

testimony on specific dog behaviors they allege Misty exhibited. (Docket #32.) Sharpe's qualifications, which the Hennings do not challenge, include over twenty years of experience training dogs in such areas as behavioral modification, aggression modification, and obedience training. (Defs.' Disclosure of Expert Ex. A (the "Report") 1.) She is a Certified Pet Dog Trainer, a member of the Association of Pet Dog Trainers, an American Red Cross Instructor for pet emergency care, and the holder of three patents for dog products. (*Id*.)[2]

After reviewing the parties' deposition testimony and exhibits, photographs of the dog and the Henning residence, and records from the Fort Wayne Animal Care and Control concerning this and previous incidents at the Henning residence, Sharpe issued a Report, later supplemented by an Affidavit dated July 27, 2009. (Defs.' Resp. Ex. A (the "Affidavit.")[3] In her somewhat skeletal Report, Sharpe detailed the dog behavioral phenomenon of "barrier aggression," in which a dog becomes more aggressive when contained by a physical barrier. (Report 2.) She also briefly refers to the "fight or flight instinct," the effects of a volatile living environment on aggression, and territorial aggression generally. (*Id*.)

Ultimately, the Report concluded that: (1) Misty's living conditions were conducive to barrier aggression; (2) by being tethered, Misty's flight option was removed and she would have no choice but to fight if threatened; (3) Chows and German Shepherds are at the top of the list for aggressive breeds; (4) Misty lived in a volatile environment that would likely make her more

---

[2] The Court agrees that Sharpe's experience, education, and training sufficiently qualify her as an expert in dog behavior and training. "[O]nce a witness passes the threshold of knowledge, skill experience, training, or education to qualify as an expert, any shortcomings or deficiencies which he or she possesses are reserved for cross-examination." *Traharne v. Wayne/Scott Fetzer Co.*, 156 F.Supp. 2d 697, 706 (N.D. Ill. 2001); *see also Bourke v. Ford Motor Co.*, No. 2:03-cv-136, 2006 WL 3833324, at *2 (N.D. Ind. Dec. 27, 2006).

[3] The Report and Affidavit will be referred to in this Opinion and Order as Sharpe's "testimony."

3

aggressive; and, (5) dogs that are territorially aggressive do not want any person or animal coming near or onto their territory and will often exhibit barking, growling, and biting in response (*Id.*)

In the present motion, the Hennings seek to exclude Sharpe's testimony, asserting that Sharpe's opinions are irrelevant, unreliable, and not supported by scientific data. (Mem. in Supp. of Pls.' Mot. in Opp'n to Defs.' Proposed Expert Susan Sharpe ("Pls.' Mem.") 2-5.) In response, the Defendants argue that Sharpe's opinions are supported by scientific data and methodology, are non-speculative, and are indeed relevant to rebut the Hennings' proffered evidence that Misty was a gentle, non-aggressive dog. (Defs.' Resp 5-9.)

Because the Court finds that Sharpe's discussion of the phenomena of barrier aggression and territorial aggression is supported by adequate methodology, she will be permitted to testify to their existence and about what behaviors a dog suffering from these conditions would exhibit. However, Sharpe will not be permitted to testify as to either the existence or effects of the fight or flight instinct or the effects of Misty's alleged volatile living environment on her purported aggression, since the Court finds her methodology with respect to these statements to be lacking. Furthermore, Sharpe will not be permitted to offer any testimony about whether Misty exhibited aggressive behavior or whether Chows and German Shepherds are generally aggressive.

### III. APPLICABLE LAW

The admissibility of expert evidence is governed by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

*Daubert* requires a district court to exercise a "gatekeeping" function to ensure that expert testimony is both reliable and relevant pursuant to Rule 702. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999); *see generally Daubert*, 509 U.S. at 589-92; *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 607 (7th Cir. 2006). The fundamental purpose of the gate keeping requirement "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152.

According to the Seventh Circuit Court of Appeals, to gauge reliability, "the court is to determine whether the expert is qualified in the relevant field and . . . examine the methodology the expert has used in reaching his conclusions." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). "The burden of showing an expert's testimony to be relevant and reliable is with the proponent of the evidence." *Bickel v. Pfizer, Inc.*, 431 F. Supp. 2d 918, 921 (N.D. Ind. 2006).

When determining whether an expert is qualified to render an opinion, the court should consider his "full range of practical experience as well as academic or technical training . . . ." *United States v. Parra*, 402 F.3d 752, 758 (7th Cir. 2005) (quoting *Smith*, 215 F.3d at 718). Nevertheless, "[a] court's reliability analysis does not end with its conclusion that an expert is qualified to testify about a given matter . . . [T]he court's gatekeeping function [also] focuses on

5

an examination of the expert's methodology." *Smith*, 215 F.3d at 718. Accordingly, "[an] expert['s] work is admissible only to the extent it is reasoned, uses the methods of the discipline, and is founded on data. Talking off the cuff–deploying neither data nor analysis–is not an acceptable methodology." *Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919, 924 (7th Cir. 2000).

Specifically, *Daubert* outlined the following factors to guide district courts in assessing an expert's methodology:

> (1) whether a theory or technique . . . can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique or method has met with general acceptance.

*United States v. Conn*, 297 F.3d 548, 555 (7th Cir. 2002) (quoting *Daubert*, 509 U.S. at 593-94) (internal quotations omitted). "[A]lthough the fundamental task of the trial court remains the same no matter what sort of specialized information is proffered, the *Daubert* factors set forth above ought not be considered a definitive check list suitable for the evaluation of all kinds of evidentiary submissions involving specialized knowledge." *Id.* at 555-56. Indeed, this list is "neither definitive nor exhaustive, but rather flexible to account for the various types of potentially appropriate expert testimony." *Deputy*, 345 F.3d at 505.

Even if an expert's testimony is deemed reliable, it must be excluded if it is not relevant, which means under Rule 702 that it is not likely "to assist the trier of fact to understand the evidence or determine a fact in issue . . . ." *United States v. Hall*, 93 F.3d 1337, 1342 (7th Cir. 1996). Stated another way, "the suggested . . . testimony must 'fit' the issue to which the expert is testifying." *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002) (quoting *Porter v. Whitehall Labs. Inc.*, 9 F.3d 607, 614 (7th Cir. 1993)).

6

Moreover, when determining whether an expert's testimony is admissible, "[i]t is critical under Rule 702 that there be a link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support." *United States v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003) (citing *Gen. Elec. v. Joiner*, 522 U.S. 136, 146 (1997)). As the Supreme Court wrote: "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec.*, 522 U.S. at 146. Stated another way, an expert "who invokes 'my expertise' rather than analytic strategies widely used by specialists is not an expert as Rule 702 defines that term." *Zenith Elec. Corp. v. WH-T Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005).

## IV. DISCUSSION

The Hennings request that the Court bar Sharpe from testifying as an expert witness for the Defendants, arguing that her proposed testimony is irrelevant, unreliable, and not supported by scientific data. (Pls.' Mem. 2-5.) In response, the Defendants contend that Sharpe's testimony should be admitted in full, because it is relevant, non-speculative, and supported by scientific data and methodology. (Defs.' Resp 5-9.) Neither the Hennings' nor the Defendants' arguments are entirely persuasive. Accordingly, the Court will permit the admission of selected parts of Sharpe's testimony, while disallowing others.

### *A. Sharpe's Admissible Testimony*

Sharpe will be permitted to offer testimony about the existence of such conditions as barrier aggression and territorial aggression, as well as the behavior one would expect to see from a dog suffering from these conditions, to rebut the Hennings' evidence that Misty was a

gentle, non-aggressive dog. Sharpe's methodology is sufficient to allow her to testify as to the existence and effects of these dog behavioral conditions. She based her opinions as to the existence of barrier aggression and territorial aggression, in part on her own experience, which the Hennings do not challenge, but also on the published works of other canine experts. (Affidavit 2.) "[R]eview of . . . scientific data generated by others in the field may suffice as a reasonable methodology upon which to base an opinion." *Clark v. Takata Corp.*, 192 F.3d 750, 758 (7th Cir. 1999) (internal quotation marks omitted); *see generally Cooper v. Carl A. Nelson & Co.*, 211 F.3d 1008, 1020 (7th Cir. 2000) (articulating that "experts in various fields may rely properly on a wide variety of sources and may employ a similarly wide choice of methodologies in developing an expert opinion"). Moreover, Sharpe's testimony is likely "to assist the trier of fact to understand the evidence or determine a fact in issue . . . ." *Hall*, 93 F.3d at 1342. In particular, her testimony would help acquaint the jurors to the existence and effects of such behavioral phenomena, as it ostensibly would explain why otherwise docile, chained dogs may become uncharacteristically aggressive, as well as the nature of their aggression. S*ee generally Walker* 208 F.3d at 586; *Smith*, 215 F.3d at 718.

Attacks on Sharpe's credibility, the specifics of her methodology, and the overall strength of her theories may be raised by the Hennings at trial. *See Spearman Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 138 F. Supp. 2d 1088, 1097-98 (N.D. Ill. 2001) (emphasizing to defendant that it was free to cross-examine plaintiff's roofing expert, whose opinion was based on firsthand observation combined with extensive roofing experience, concerning his methodology). "[An expert's] decision to use one form of scientific methodology . . . as opposed to another . . . goes to the expert's credibility, not the admissibility of his testimony." *Troutner v. Marten Transp.,*

*Ltd.*, No. 2:05-CV-40-PRC, 2006 WL 3523542, at *6 (N.D. Ind. Dec. 5, 2006); *see also NutraSweet Co. v. X-L Eng'g Co.*, 227 F.3d 776, 789-90 (7th Cir. 2000); *see generally Daubert*, 509 U.S. at 596. Sharpe will therefore be permitted to testify about the existence of barrier aggression and territorial aggression and how such phenomena would likely manifest themselves in a dog suffering from those experiences.

### B. Sharpe's Inadmissible Testimony

Sharpe will not, however, be allowed to testify as to the existence of the fight or flight instinct or the effects of a volatile living environment on Misty or how such a dog suffering from these conditions would behave. In this instance, the Court finds the methodology supporting these assertions to be lacking. Unlike Sharpe's assertions concerning barrier aggression and territorial aggression, which were supported by citations to relevant scholarly works by other canine experts, Sharpe provides no support at all for her conclusions (*See* Affidavit 2). She does not demonstrate that these theories have "been subjected to peer review or publication" or whether they have "met with general acceptance." *Conn*, 297 F.3d at 555 (quoting *Daubert*, 509 U.S. at 593-94). As stated *supra*, "[t]alking off the cuff–deploying neither data nor analysis–is not an acceptable methodology." *Lang,* 217 F.3d at 924. *See generally Gen. Elec.*, 522 U.S. at 146; *Zenith*, 395 F.3d at 419.

Furthermore, Sharpe will not be permitted to testify that Misty was in fact exhibiting any specific behavioral conditions on the day of the shooting. Such testimony by Sharpe would "exceed [her] expertise and would invade the province of the jury." *Sonnier v. Field*, No. 2:05-cv-14, 2007 WL 576655, at *4 (W.D. Pa. Feb. 21, 2007); *see also Richman v. Sheahan*, 415 F. Supp. 2d 929, 941-44 (N.D. Ill. 2006). Even considering the "broad latitude" given to the trial

9

court to evaluate an expert's methodology, *Kumho Tire Co.*, 526 U.S. at 141, the Court finds that Sharpe's opinions as to whether Misty actually exhibited any of the behaviors in question are not grounded in sufficient data and methodology. For example, Sharpe states that Misty lived in an "unstable" and "volatile" environment (Report 1), without defining what constitutes such an environment or detailing how she reached the conclusion that the Henning residence was in fact unstable or volatile. Rather, Sharpe seems to merely invoke "'[her] expertise' rather than analytic strategies widely used by specialists." *Zenith,* 395 F.3d at 419. "Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec.*, 522 U.S. at 146. Sharpe will therefore not be permitted to testify as to the specific behavior exhibited by Misty on the day of the shooting. And of course, she may not opine about whether she believes that the officers acted reasonably in shooting Misty or that their subsequent statements and testimony are credible.

Finally, Sharpe will not be allowed to offer any testimony as to the alleged aggressive tendencies of any breed of dog. In this instance, Sharpe's methodology is, once again, deficient. Her report simply states that, "Chows and German Shepherds are at the top of the list for aggressive tendencies" (Report 2), without providing any support or documentation. There is no evidence of "whether the theory . . . has been subjected to peer review and publication," or "whether the [theory] has met with general acceptance." *Daubert*, 509 U.S. at 593-94. In reaching this conclusion, Sharpe ". . . deploy[s] neither data nor analysis." *Lang*, 217 F.3d at 924. Rather, we again have nothing but her *ipse dixit* opinion. *See Gen. Elec.*, 522 U.S. at 146. Accordingly, Sharpe will not be permitted to testify about the alleged aggressive tendencies of

any breed of dog.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Exclude Defendants' Designated Expert Witness is hereby GRANTED IN PART and DENIED IN PART. Sharpe will be permitted to testify to the existence of the dog behavioral conditions of barrier aggression and territorial aggression and the likely behavior expected from a dog suffering from them, but she will not be allowed to testify about whether Misty herself suffered from such phenomena or was exhibiting behavior consistent with them. Sharpe will also not be permitted to testify as to the allegedly aggressive tendencies of Chow and German Shepherd breeds.

SO ORDERED.

Enter for the 8th of September, 2009.

S/Roger B. Cosbey  
Roger B. Cosbey,  
United States Magistrate Judge