# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| KEITH HENNING, MONIQUE HENNING, and KEITH HENNING, JR., ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | CAUSE No. 1:08-cv-180 |
| OFFICER GEORGE NICKLOW and OFFICER BEN SPRINGER ) ) ) | |
| Defendants. ) | |

## OPINION AND ORDER

On June 30, 2008, Plaintiffs Keith Henning, Monique Henning, and Keith Henning, Jr. sued Defendants Fort Wayne Police ("FWPD") Officers George Nicklow and Ben Springer under 42 U.S.C § 1983, alleging that Defendants violated their Fourth Amendment right against unreasonable seizure of their property when the officers shot and killed their pet dog, "Misty". Before the Court is a motion *in limine* filed by the Hennings. (Docket #57.)[1] For the reasons provided, the Hennings' Motion in Limine will be GRANTED IN PART and DENIED IN PART.

### I. NATURE OF AN ORDER IN LIMINE

"Motions in limine are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues." *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir.

---

[1] Also before the Court is a motion *in limine* filed by Defendants (Docket #66), which will be addressed by a separate contemporaneously filed Opinion and Order.

2002); *see Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir. 1999) ("A motion in limine is a request for guidance by the court regarding an evidentiary question." (citation omitted)). A court's ruling on a motion *in limine*, however, is only preliminary in nature. *McKinney v. Duplain*, No. 1:04-cv-294-RLY-TAB, 2008 WL 4368857, at *1 n.1 (S.D. Ind. Jan. 10, 2008).

That is, a ruling *in limine* is "'subject to change when the case unfolds,' particularly if the actual testimony differs from what was proffered." *Mason v. City of Chicago*, 631 F. Supp. 2d 1052, 1055 (N.D. Ill. 2009) (quoting *Luce v. United States*, 469 U.S. 38, 41 (1984)); *see Wilson*, 182 F.3d at 570 (emphasizing that an order either granting or denying a motion *in limine* is "merely speculative in effect, completely dependent upon what happens at trial"). "Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Mason*, 631 F. Supp. 2d at 1055 (quoting *Luce*, 469 U.S. at 41-42). Judges have broad discretion when ruling on motions *in limine*. *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002).

## II. THE PLAINTIFFS' MOTION IN LIMINE

### A. *Unopposed Portions of the Hennings' Motion in Limine*

The Defendants did not raise any objection to paragraphs 5, 11, 15-18, 20, and 22 of the Hennings' Motion in Limine, concerning the FWPD protocol or standard operating procedures or policies; testimony about the alleged dog "fight or flight" instinct; attorney fees; any settlement negotiations; tax considerations; "send a message" arguments in opening or closing statements; any claims that if a defendant failed to sign his responses to the Hennings' discovery responses, those responses are invalid, and; any references that Stephanie, Joshua, and Victoria Henning are no longer plaintiffs. Consequently, the Hennings' Motion will be GRANTED as to

these matters.

### B. Narrative Reports of the Defendant Officers

The Hennings seek to preclude any narrative reports prepared by Officers Nicklow and Springer or any other officers after the incident, arguing that they are biased, prejudicial, and constitute inadmissible hearsay. (Pls.' Mot. in Limine ("Pls.' Mot.") 1-2.) The Defendants counter that the reports are admissible under the public records exception to the hearsay rule of Federal Rule of Evidence 803(8). (Defs.' Resp. to Pls.' Mot. in Limine ("Defs.' Resp.") 1-2.) Furthermore, the Defendants also contend that the reports should be admissible for the purposes of refreshing the officers' recollections. (Defs.' Resp. 2.)

At this stage, the Hennings' Motion in Limine is GRANTED with respect to this evidence. Presumably, the narrative reports may ultimately be admissible, at least in part, under Rule 803(8), although certain hearsay statements within the reports may need to be redacted. Without having an opportunity to rule in the context of the trial, the admissibility of the documents and the prejudicial effect of the imbedded statements cannot be ascertained. Counsel are directed to confer in an effort to reach a stipulation concerning suitable redactions. Moreover, until the Defendants have laid a proper foundation, the officers may not use the document to refresh their recollection or read the document into evidence under Rule 803(5). *See generally United States v. Barker*, 27 F.3d 1287, 1292 (7th Cir. 1994) (reiterating that a proper foundation must be laid for physical exhibits).

### C. The Criminal Record of Any of the Plaintiffs

The Hennings next seek to prevent the Defendants from introducing any evidence of their previous arrests and criminal history. (Pls.' Mot. 2.) The Defendants counter that any conviction

3

of a crime punishable by death or imprisonment for more than a year or that has an element involving dishonesty or a false statement is admissible under Federal Rule of Evidence 609(a) for impeachment purposes. (Defs.' Resp. 3.) The Defendants have not, however, shown that any of the Hennings have a criminal history that meets the requirements of Rule 609(a). The Hennings' motion will therefore be GRANTED until such time as the Court is made aware of the Hennings' criminal histories and may evaluate their admissibility under Rule 609(a).

*D. Any Allegations of Misconduct Made by Herbert Howell Against the Hennings*

The Hennings also move that any allegations of misconduct made against them by their neighbor, Herbert Howell, be disallowed. They argue that discussing the specifics of Mr. Howell's allegations would be highly prejudicial and distract the jury from the question of the reasonableness of the Defendants' actions. (Pls.' Mot. 2.) The Defendants point out that the Hennings' alleged misconduct towards Mr. Howell was the reason the police were called in the first place and goes to the totality of the officers' knowledge as they approached the Henning residence. (Defs.' Resp. 6.)

The Defendants' argument is persuasive. The complaints are not character evidence to show the Hennings' prior bad conduct, but rather, they are being offered to inform the jury concerning the officers' knowledge as they approached the Henning residence following a second disturbance call. *See* Fed. R. Evid. 404(b). The Seventh Circuit Court of Appeals has held that "[e]vidence of other acts which are 'intricately related to the facts of the case' is admissible without reference to Rule 404(b), provided that it passes the balancing test under Rule 403." *United States v. Hargrove*, 929 F.2d 316, 320 (7th Cir. 1991) (citing *United States v. Hawkins*, 823 F.2d 1020, 1023 (7th Cir. 1987)).

4

Here, the complaints are intricately related to the facts of the case: indeed, they are the reason why the officers were at the Henning residence to begin with. Notably, however, the Defendants are not being granted leave to introduce evidence of every conflict and disagreement between the Hennings and Mr. Howell. Rather, they are simply being allowed to introduce the two complaints of June 23, 2007, to demonstrate, among other things, that there may have been some basis for vigilance, even apprehension, on the part of the officers as they approached the Henning residence. In that regard, it should be noted that Howell's complaints are not being offered for the truth of the matter asserted but rather, simply, to show notice to the police officers of such complaints. *See* Fed. R. Evid. 801(c). So limited, the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice or confusion of the issues. Fed. R. Evid. 403. As such, the Hennings' motion is DENIED in this respect.

*E. Any Testimony by Howell About His Observation of the Shooting*

Additionally, the Hennings argue that Mr. Howell should not be allowed to testify about witnessing the shooting because the Defendants failed to disclose that fact, as they were required to do under Federal Rule of Civil Procedure 26(a)(1). (Pls.' Mot. 3-5.)

The Defendants respond that they did meet their disclosure obligations by including Mr. Howell in Disclosure B of their Rule 26(a)(1) Initial Disclosures. (Docket #80.) They also contend that counsel for the Hennings could have contacted Mr. Howell to question him about his personal knowledge of the shooting. (Defs.' Resp. 8.) As the Defendants see it, they should not be sanctioned because "[t]he fact that the plaintiffs' counsel failed to contact or depose Mr. Howell is not the fault of defense counsel." (*Id*.)

Federal Rule of Civil Procedure 26(a)(1) provides that a party must disclose "the name . .

5

. of each individual likely to have discoverable information — along with the subjects of that information — that the disclosing party may use to support its claims or defenses . . .." Additionally, if a party fails in that duty, they cannot "use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

To assess this issue, the Court directed counsel to file their Rule 26(a)(1) disclosures. Upon review, of the Defendants' Initial Disclosure (Docket #80), it is apparent that they failed to list Mr. Howell as required Rule 26(a)(1)(A)(i). Although the Disclosure does list as a document: "One CD containing audio of two calls placed by Herbert Howell to 9-1-1 on June 23, 2007 . . .", that merely refers to some electronically stored information that the Defendants might use in their defense apart from Mr. Howell's testimony. More to the point, nowhere in the Disclosure is there the slightest indication that Mr. Howell actually witnessed the shooting of the Hennings' dog.

Furthermore, as the Hennings correctly point out, this failure is far from substantially justified or harmless. After all, Howell's testimony as a complaining neighbor is one thing, but his witnessing the critical event of the lawsuit is of another magnitude. The fact that Howell's anticipated testimony on this important point remained undisclosed in violation of the rules until well after discovery (and right up until the final pretrial conference), strongly suggests that the automatic exclusion under Rule 37(c) should apply. *See Kunz v. DeFelice*, 538 F.3d 667, 677 (7th Cir. 2008) ("If the testimony of these witnesses was relevant and useful, then [the] failure to disclose was prejudicial, and the district court properly exercised its discretion to exclude the testimony as a Rule 37 sanction.")

Indeed, at this late date, mere days before the trial, there is no vehicle (for instance, a deposition of Howell at the expense of the Defendants) that the Court can employ to ameliorate the obvious prejudice, or to render the violation of Rule 26(a)(1) harmless. The Hennings' motion is therefore GRANTED. Since Mr. Howell was not properly disclosed under Rule 26(a)(1), his purported eyewitness testimony will be excluded under Rule 37(c). *See Kunz*, 538 F.3d at 677; *Miksis v. Howard*, 106 F.3d 754, 760-61 (7th Cir. 1997) ("Given this delay [in disclosure], the district court was still well within its discretion to strike defendants' experts."). As noted above, however, Defendants may introduce into evidence Mr. Howell's June 23, 2007, complaints to the FWPD, as they were certainly known to the Hennings' counsel since the outset of the case.

*F. FWPD Visits to the Henning Residence Prior to the Shooting and Allegations That Any of the Plaintiffs Have Been in Physical Altercations*

The Hennings move that any evidence of their encounters with the FWPD prior to the June 23, 2007, incident be disallowed as irrelevant, immaterial, and unduly prejudicial. (Pls.' Mot. 6.) The Hennings also argue that any evidence that they have been involved in physical confrontations is inadmissible character evidence under Federal Rule of Evidence 404(b) and is irrelevant to the ultimate question of their alleged constitutional deprivation. (Pls.' Mot. 6). The Defendants counter that evidence of past physical altercations is relevant to show the dog's volatile living environment, which in turn would explain her alleged aggressive behavior. (Defs.' Resp. 9.)

As discussed above, the Defendants will be allowed to introduce evidence about the two specific complaints by Mr. Howell that brought them to the Henning residence on June 23, 2007. The probative value of any other interactions with the FWPD is outweighed by the danger of

7

unfair prejudice and confusion of the issues. Fed. R. Evid. 403. The Court has already ruled that the Defendants' expert cannot opine about Misty's alleged volatile living conditions and how these conditions may have affected her behavior. (Op. and Order Excluding Expert 9-10.) Therefore, the remaining relevancy, if any, of this evidence is quite minimal. Fed. R. Evid. 401, 402. Moreover, introduction of this evidence would result in a considerable waste of time, as each FWPD visit would become a trial within itself, particularly since the Hennings will presumably feel compelled to dispute one incident after another. Fed. R. Evid. 403; *See Soller v. Moore*, 84 F.3d 964, 968 (7th Cir. 1996) (discussing the need to avoid a "trial within a trial"). For the same reason, evidence of past physical altercations (again, allegedly "relevant to the dog's volatile living environment" (Defs.' Resp. 9)), is also irrelevant, or at least so minimally relevant that its admission is clearly outweighed by its prejudicial effect. Fed. R. Evid. 403. Accordingly, the Motion in Limine will be granted on these points.

*G. Allegations that the Hennings Did Not Properly Care for Misty*

The Hennings next argue that any allegations that they did not properly care for Misty should not be admitted. (Pls.' Mot. 6-7.) They claim that such evidence would be highly prejudicial and would impermissibly distract the jury away from the real issue concerning their alleged constitutional deprivation. (*Id*.) The Defendants respond that this evidence is relevant both to the possible existence of barrier and territorial aggression and to the issue of damages. (Defs.' Resp. 9-11.)

The Hennings' argument falls short. As the Defendants correctly point out, this Court previously held that the Defendants' expert would be permitted to testify "about the existence of such conditions as barrier aggression and territorial aggression, as well as the behavior one

8

would expect to see from a dog suffering from these conditions. . ..." (Op. and Order Excluding Expert 7.) Although the Defendants' witnesses will not be permitted to offer opinion testimony concerning whether Misty actually suffered from barrier or territorial aggression, they should not be precluded from offering testimony, based on personal knowledge, that sheds light on the frequency and duration of her exposure to either barriers or tethering, and her behavior. "[A] lay witness's purpose is to inform the jury what is in the evidence, not to tell it what inferences to draw from that evidence." *United States v. Noel*, 581 F.3d 490, 496 (7th Cir. 2009).

Furthermore, testimony about the Hennings' treatment of Misty is likely relevant to the question of damages. Fed. R. Evid. 402. As discussed in the Court's contemporaneous Opinion and Order on the Defendants' motion *in limine*, the Hennings will be allowed to offer evidence about Misty's characteristics as a companion, pet, and watchdog to the extent it assists in determining the value of the dog at the time of the loss. (Op. and Order on Defs.' Mot. in Limine 8.) It therefore stands to reason that the Defendants should be allowed to introduce evidence about Misty's treatment at the hands of the Hennings; to discredit, in effect, the validity of the Hennings' testimony concerning Misty's value as a companion, pet, and watchdog. Accordingly, the Hennings' motion is DENIED with respect to this evidence about Misty's care and treatment.

### H. Alleged Aggressive Tendencies of the Chow and German Shepherd Breeds

The Hennings' motion also asks the Court to exclude any evidence about the alleged aggressive tendencies of Chows and German Shepherds, claiming that it is irrelevant, speculative, and without foundation. (Pls.' Mot. 7.) They argue that just as the Court held that the Defendants' expert could not testify about these tendencies (Op. and Order Excluding Expert

9

10), all lay witnesses should be similarly prohibited. The Defendants argue in response that they should be allowed to testify about their subjective belief that Chows and German Shepherds are aggressive dogs who are likely to bite. (Defs.' Resp. 11-12.) They claim that this evidence is admissible because it tends to explain the deadly action they took. (*Id*.)

At this stage, the Hennings' motion will be GRANTED. The Defendants will not be permitted to offer evidence that this Court has previously held must be given by an expert. (Op. and Order Excluding Expert 7); Fed. R. Evid. 702. The Defendants may, however, eventually be permitted to testify about their beliefs, if they first lay a foundation showing that a reasonable police officer would believe that Chow and German Shepherd dogs are, by their nature or breed, aggressive and likely to bite.

*I. Alleged Effects of a Volatile Environment on Dog Behavior and Allegations that Misty Lived in a Volatile Environment*

Similarly, the Hennings ask the Court to exclude any evidence about the behavior of dogs who live in a volatile environment and any allegations that Misty lived in such an environment, arguing again that lay witnesses cannot give testimony that the Court has previously held must be given by an expert. (Pls.' Mot. 10-11.) The Defendants counter that the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice. (Defs.' Resp. 12.)

The Hennings' motion will be GRANTED. As previously noted, the Defendants will not be permitted to offer lay opinion on matters that require expert testimony. (Op. and Order Excluding Expert 9-11); Fed. R. Evid. 702.

*J. Allegations that Misty Was Exhibiting Barrier Aggression or*
*Territorial Aggression at the Time She Was Shot*

The Hennings also ask the Court to preclude any testimony that Misty was exhibiting barrier aggression or territorial aggression at the time she was shot. (Pls.' Mot. 8-9.) They argue that this evidence should be excluded, consistent with the Court's prior holding that the Defendants' expert could only testify about the existence of these phenomena, not that Misty was actually exhibiting such behavior when she was shot. *(See* Op. and Order Excluding Expert 9-10.) As previously discussed, the Defendants' lay witnesses will similarly not be permitted to offer testimony on this topic or any other that must be given, if at all, by an expert. *(Id.)*; Fed. R. Evid. 702.

*K. Any Publications, Reports, or Other Documents Relied on by Defendants' Expert*

The Hennings' motion also argues that the publications, reports, or other documentation relied on by the Defendants' expert should be excluded as hearsay. (Pls.' Mot. 8.) They further request that the Defendants' written expert report be excluded as well, consistent with the Court's previous ruling. *(See* Op. and Order Excluding Expert 7-11.) The Defendants counter that these materials are admissible under Federal Rule of Evidence 803(18) as learned treatises. (Defs.' Resp. 12-13.)

The Hennings' motion will be GRANTED IN PART and DENIED IN PART. Under Federal Rule of Evidence 803(18), the materials relied upon by an expert may be read into evidence, but may not be received as exhibits. *See also Finchum v. Ford Motor Co.*, 57 F.3d 526, 531-32 (7th Cir. 1995). The Court has previously ruled, however, that the Defendants' expert may only testify about the existence of barrier aggression and territorial aggression and how they may affect dog behavior in general. *(See* Op. and Order Excluding Expert 7-11.) At the same

11

time, the Court excluded any proposed expert testimony concerning the existence of the fight or flight instinct, the effects of a volatile living environment on dog behavior, whether Misty was actually exhibiting any of these behaviors, and the inherent aggressive tendencies of Chows and German Shepherds. (*See Id.* at 9-11.) Therefore, assuming a proper foundation is laid, the Defendants' expert will be permitted to read into evidence only those materials she relied upon in crafting her opinion concerning the existence of barrier and territorial aggression and the effect they have on dog behavior in general. *See* Fed. R. Evid. 803(18) (stating that statements must be established as a reliable authority to be read into evidence).

*L. Any Evidence of Visits to the Henning Residence by Fort Wayne Animal Control*

The Hennings move to prevent the introduction of any evidence about previous visits by Fort Wayne Animal Control to their residence, arguing that such evidence is irrelevant, highly prejudicial, and will distract the jury from the ultimate question of the Defendants' alleged unreasonable seizure of Misty. (Pls.' Mot. 9.) The Defendants counter that such evidence goes to the issue of damages, as it is relevant to determining Misty's value as a pet, companion, and watchdog. (Defs.' Resp. 14.)

At this point in time, the Hennings' motion is GRANTED. The reports may contain admissible evidence, but until the Court can examine the exhibits and the specific allegations within the context of the trial and assess their probative value under Federal Rule of Evidence 403, they will be excluded.

*M. Any Evidence of City or County Ordinances Affecting the Chaining of Dogs that Were Not in Effect on June 23, 2007*

The Hennings also ask the Court to preclude any evidence of city or county ordinances in Fort Wayne, Indiana, concerning the chaining of dogs that were not in effect on June 23, 2007.

12

(Pls.' Mot. 10.) They argue that these ordinances are irrelevant to the issue of whether the Defendants acted unreasonably. (*Id*.) The Defendants respond that this evidence goes to the issue of damages, since it may show that the Hennings tethered Misty beyond the time permitted by law and thus did not properly care for their dog. (Defs.' Resp. 14-15.)

The Defendants' argument misses the mark. The Hennings are seeking to prevent only the admission of evidence concerning those ordinances that were *not* in effect on June 23, 2007, the day Misty was shot. In that regard, it is difficult to see how ordinances that were not in effect at the time could be relevant to any issue in this case. *See* Fed. R. Evid. 402 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that *is of consequence to the determination of the action* more probable or less probable than it would be without the evidence.") (emphasis added). The Hennings' motion is therefore GRANTED until such time as Defendants are able to demonstrate the relevance of this evidence.

*N. Allegations that the Hennings Wilfully Lost or Destroyed Evidence*

Finally, the Hennings move to exclude any allegation that Misty's chain was wilfully lost or destroyed, and in particular, a spoliation of evidence jury instruction. (Pls.' Mot. 11-13.) As the Hennings see it, because the Defendants have never suggested that the chain was intentionally destroyed and were provided with photographs showing the length and location of the chain, they cannot assert evidence spoliation now. (*Id*.) The Defendants correctly argue that they should at least be able to question the Hennings about what happened to the chain. The Hennings, however, want to go one step further and preempt any allegation or inference that the chain was deliberately destroyed.

"It is a general rule that the intentional spoliation or destruction of evidence relevant to a

case raises a presumption, or, more properly, an inference, that this evidence would have been unfavorable." 29 Am. Jur. 2d Evidence § 256. The mere fact that evidence was destroyed is insufficient to create the unfavorable inference. *Park v. City of Chicago*, 297 F.3d 606, 615 *(*7th Cir. 2002); *Rummery v. Ill. Bell Tel. Co.*, 250 F.3d 553, 558 (7th Cir. 2001). "Rather, to draw such an inference, the [evidence] must have [been] destroyed . . . in bad faith." *Park*, 297 F.3d at 615; *S.C. Johnson & Son, Inc. v. Louisville & Nashville R.R. Co.*, 695 F.2d 253, 258 (7th Cir. 1982). "The crucial element is not that evidence was destroyed but rather the reason for the destruction." *S.C. Johnson & Son, Inc*., 695 F.2d at 258.

At this point, the Hennings' motion will be GRANTED. As the Hennings correctly observe, the Defendants have not previously claimed or produced any evidence suggesting either bad faith or deliberate destruction. The Defendants will, of course, be able to question the Hennings about what happened to the chain, but at this point they are not entitled to a spoliation of evidence instruction. *See Park*, 297 F.3d at 615. Furthermore, photographs allegedly showing the length and location of the chain may be admitted once a proper foundation is laid. *See Barker*, 27 F.3d at 1292.

### III. CONCLUSION

For the foregoing reasons, the Hennings' Motion in Limine (Docket # 57) is GRANTED IN PART and DENIED IN PART. It is therefore ORDERED that counsel, those acting on behalf of the parties, and any witnesses shall not refer to the matters excluded pursuant to this Opinion and Order, either directly or indirectly, during voir dire, opening statements, interrogation of witnesses, objection, arguments, closing statements, or otherwise, without first obtaining permission of the Court outside the presence or hearing of the jury. Counsel are

further ORDERED to warn and caution each and every one of their witnesses to strictly follow these instructions.

SO ORDERED.

Enter for the 30th of October, 2009.

S/Roger B. Cosbey  
Roger B. Cosbey,  
United States Magistrate Judge